IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

DEANDRE D. DIXON,

        Petitioner,    :    Case No.3:20-cv-383

  - vs -                              District Judge Douglas R. Cole
                                    Magistrate Judge Michael R. Merz

CHAE HARRIS, Warden,
  Lebanon Correctional Institution,

                                   :
        Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Deandre Dixon, is before the Court for initial review under Rule 4 of the Rules Governing § 2254 Cases which provides that the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

The Court's regular assignment procedures include a venue provision requiring habeas corpus cases to be considered at the seat of court serving the county in which a petitioner was convicted. Because Dixon was convicted in the Montgomery County Court of Common Pleas, Magistrate Judge Litkovitz transferred the case from Cincinnati to Dayton where it was randomly assigned to District Judge Douglas Cole. The case was then automatically referred to the

1

undersigned under General Order Day 13-01.

**Factual Background**

    The Second District Court of Appeals stated the background facts of the case as follows:

    [*P3]  The present appeal stems from the shooting death of Gregory Moses on the night of December 2, 2016. At the time of his death, Moses was involved in a romantic but volatile relationship with a woman named Michelle Edwards. They were living together, and they fought and argued regularly. While still residing with Moses, Edwards met appellant Dixon in November 2016. Edwards and Dixon began dating and became intimately involved.

    [*P4]  On December 1, 2016, Edwards spent the night with Dixon at his mother's house. The following morning, Dixon dropped Edwards off down the street from Moses' house. She walked to the house and found her clothes and other belongings outside. Edwards confronted Moses, who brought the items back inside. Later that day, Dixon called Edwards while she was at Moses' house. Edwards told Dixon that she loved him. Moses responded by telling Edwards to "get the F out." He threw her belongings outside again and poured bleach on them.

    [*P5]  That evening, Edwards went out drinking with her sister, Quayshawn. While at a nightclub, she spoke to Dixon on her cell phone shortly after 10:00 p.m. She mentioned her belongings being put outside earlier in the day but told Dixon that she still loved Moses. Dixon responded by cursing and threatening to kill Moses. Edwards did not take the threat seriously. Shortly after Edwards finished speaking to Dixon, his cell phone began "pinging" off of cell towers as it moved north away from his mother's house and toward Dixon's home. Twenty-five minutes later, Dixon's cell phone "pinged" off of the cell tower that serviced Moses' home. Edwards then spoke to Dixon again around 11:30 p.m. He told her he had taken care of everything.

    [*P6]  Moses' friend Anthony Ivery called Moses around 11:37 p.m., but the call went to voicemail. Ivery then drove to Moses' house so the two men could go out together. When he arrived, Ivery saw that the front door was open and there were several bullet holes in the glass screen door. Ivery found Moses' body on the floor inside

> the door. Moses had been shot in the shoulder and the head. Police identified Dixon as a suspect several hours later. Dixon fled on foot when police arrived at his mother's house to arrest him. As he ran, he dropped a bag containing two .38 caliber revolvers and several rounds of ammunition. A forensic firearms examiner determined that one of the revolvers was the weapon that fired a bullet recovered from the back of Moses' skull.

*State v. Dixon*, 2019-Ohio-231 (Ohio App. 2d Dist. Jan. 25, 2019).

**Litigation History**

According to Dixon, he was convicted by a jury of murder, felonious assault, discharging a firearm into a habitation, carrying a concealed weapon, and having a weapon while under a disability[1] (Petition, ECF No. 1, PageID 1).  On October 17, 2017, he was sentenced to twenty-seven years to life imprisonment. *Id.* He then appealed to the Ohio Second District Court of Appeals which affirmed his conviction.  *State v. Dixon,* 2019-Ohio-231 (Ohio App. 2d Dist. Jan. 25, 2019).  The Supreme Court of Ohio declined appellate jurisdiction.  *State v. Dixon*, 2019-Ohio-3505.  Dixon then filed the instant Petition by depositing it in the prison mail system September 2, 2020 (Petition, ECF No. 1, PageID 14).

**The Petition**

Dixon plead the following Grounds for Relief:

>**Ground One:**  Trial Counsel was Ineffective by Failure to Provide Notice of Intention to Use 404 Evidence.

---
[1] Dixon's Third Ground for Relief suggests he is challenging convictions not listed at this place in the Petition.

3

> **Supporting Facts:** Trial counsel violated the Sixth and Fourteenth Amendment[s] when he failed to provide notice of intention to use 404 evidence, which would have impeached State's main witness and shown evidence of motive for other person to have committed the murder.
>
> **Ground Two:** Issuance of search warrant violated Mr. Dixon's Fourth Amendment right and due process.
>
> **Supporting Facts:** Mr. Dixon's right [against] unreasonable searchs [sic] and seizure was violated when his location was recovered through a warrant citing exigent circumstances and detective falsifying information stating "witnesses are afraid of retaliation and harm" when there was [sic] no witnesses to the crime, before securing a search warrant.
>
> **Ground Three:** Mr. Dixon's convictions were against the manifest weight of the evidence, and insufficient to support his conviction, violating due process.
>
> **Supporting Facts:** The evidence was insufficient to satisfy all the elements of felonious assault, murder, improper discharge of a firearm, weapons under disability, specification for weapon, specification for repeat violent offender, violating the Due Process Clause of the United States [Constitution].

(Petition, ECF No. 1, PageID 5, 7, and 8.)

# Analysis

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Dixon claims his trial attorney provided ineffective assistance of trial counsel when he failed to give the notice required by Ohio criminal procedure of his intention to use evidence of the type described in Ohio R. Evid. 404.

4

The Sixth Amendment to the United States Constitution, made applicable to the States by the Due Process Clause of the Fourteenth Amendment, guarantees every criminal defendant the effective assistance of an attorney in his or her defense. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a

5

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Dixon raised his claim of ineffective assistance of trial counsel in his First Assignment of Error on appeal and the Second District decided it as follows:

> [*P8] In his first assignment of error, Dixon alleges ineffective assistance of trial counsel. He contends his attorney provided deficient representation by failing to give timely notice of intent to introduce other-acts evidence under Evid.R. 404(B).
>
> [*P9] The record reflects that Dixon wanted to cross examine Edwards about information contained in police reports involving

6

four prior incidents between herself and Moses. (Trial Tr. Vol. I at 213-216) [footnote omitted]. These incidents occurred in April 2014, June 2014, and May 2015. One of them involved Moses throwing Edwards' belongings out of their apartment. Another involved Edwards threatening Moses with a knife. Defense counsel argued that these incidents demonstrated the volatile nature of their relationship and that the information was relevant to Edwards' credibility and reliability. (Id.). The State objected on two grounds: (1) Evid.R. 404(B) requires the proponent of other-acts evidence to give reasonable advance notice unless excused for good cause and (2) the proposed evidence was not relevant to what happened on December 2, 2016. (Id. at 215-216). After considering the parties' arguments, the trial court sustained the State's objection on the grounds that the "police reports are too far removed and do not comply with the rules." (Trial Tr. Vol. II at 222).

 [*P10]  Upon review, we see no error in the trial court's ruling and no ineffective assistance of counsel. In our view the trial court's statement that the police reports were "too far removed" appears to be a finding that those prior incidents were not sufficiently relevant to the issues in this case. That being so, even if defense counsel had provided advance notice of the other-acts evidence he wanted to introduce, the trial court still would have excluded it for lack of relevance. Thus, Dixon cannot establish prejudice from counsel's failure to bring the police reports to the trial court's attention sooner.

 [*P11]  We also see no abuse of discretion in the trial court's determination that the proposed evidence was "too far removed" from the issues in this case to be admissible. Dixon contends on appeal that the four prior incidents were relevant to Edwards' credibility and her motive for incriminating him. But these prior incidents occurred between one and one-half and two and one-half years before the events in this case. The trial court reasonably could have concluded that this distant evidence had little bearing on Edwards' credibility as a witness or her motive for testifying against Dixon. Moreover, in conjunction with the ruling about the prior reports, the court also ruled that defense counsel could inquire of Edwards whether she was initially considered a suspect and was Mirandized by police in their initial contact. We note too that defense counsel did cross examine Edwards about more recent arguments and "violent talk" involving her and Moses in November and December 2016. (Id. at 229-230). This evidence included a threat by Edwards to have her brothers "F up" Moses. (Id. at 230).

 [*P12]  In short, because the trial court acted within its discretion in excluding the proposed other-acts evidence on relevance grounds,

> and permitted other evidence about the volatile relationship and the suspicions about Edwards, Dixon was not prejudiced by his attorney's failure to bring the Evid.R. 404(B) evidence to the trial court's attention sooner. Accordingly, his ineffective-assistance claim fails. The first assignment of error is overruled.

*Dixon*, 2019-Ohio-231.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

In this instance the Second District applied, albeit without explicit citation, the two-prong *Strickland* standard. Because the requirement to provide advance notice of the intent to use other acts evidence under Ohio R. Evid. 404 is a well-recognized requirement of Ohio law, Dixon's trial counsel's failure to give notice constituted deficient performance, satisfying the first prong of *Strickland*. However, because the evidence was too remote to be relevant and was also excludable and excluded on that alternative basis, Dixon was not prejudiced by his attorney's failure to give advance notice. In other words, even if notice had been given, the other acts evidence would have been excluded as irrelevant because too remote.

The Second District's decision on the First Assignment of Error is not an objectively unreasonable application of *Strickland* because the evidence was inadmissible on an alternative basis, one on which both the trial court and the Second District relied. The Second District's

8

decision on this issue is therefore entitled to deference and Dixon's First Ground for Relief should be dismissed.

**Ground Two:  Unconstitutional Search in Violation of the Fourth Amendment**

In his Second Ground for Relief, Dixon asserts his right under the Fourth Amendment to be free from unreasonable searches and seizures was violated by the issuance of the search warrant in this case.

Although a person's right to be free from unreasonable searches and seizures is protected by the Fourth Amendment and the federal writ of habeas corpus exists to enforce constitutional rights as they are implicated in state criminal convictions, relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts.  *Stone v. Powell,* 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does.  The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is allowed if an unanticipated and unforeseeable application of a procedural rule prevents state court consideration of merits.  *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982).  The *Riley* court, in discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of Fourth Amendment claims is, in the abstract, clearly adequate. Ohio R. Crim. P. 12 provides an adequate opportunity to raise Fourth Amendment claims in the context of a pretrial motion to suppress, as is evident in the petitioner's use of that procedure. Further, a criminal defendant, who has unsuccessfully sought to suppress evidence, may take a direct appeal of that order, as of right, by filing

9

>   a notice of appeal. See Ohio R. App. P. 3(A) and Ohio R. App. P. 5(A). These rules provide an adequate procedural mechanism for the litigation of Fourth Amendment claims because the state affords a litigant an opportunity to raise his claims in a fact-finding hearing and on direct appeal of an unfavorable decision.

*Id*. at 526.

In this case Dixon received a full hearing in the trial court on his motion to suppress, followed by a written opinion of the trial judge making findings that could be reviewed on appeal. Then the Second District considered Dixon's Fourth Amendment claim as his Second Assignment of Error and decided it as follows:

>   [*P13]  In his second assignment of error, Dixon challenges the trial court's denial of a pre-trial suppression motion. He contends a search warrant affidavit was defective because it was based on information supplied by Edwards, who was not shown to be a reliable source.
>
>   [*P14]  The record reflects that police actually obtained four search warrants in this case. [footnote omitted] Although the supporting affidavits contained some differing information, each affidavit contained the same facts obtained from Edwards. As noted by the trial court in its written decision (Doc. #44), each affidavit included the following averments by Detective Walter Steele:
>
>> On 12/2/16 (Fri) at approximately 2348 hours, Harrison Twp. Deputies were dispatched to 3733 Haney Rd. in Harrison Township reference to an unresponsive male. Upon arrival, Deputies located a black male, later identified as Gregory Moses, deceased just inside the door of the residence. Moses had been shot in his body succumbing to his injuries from apparent gunshot wounds.
>>
>> There were at least 5 bullet holes in the front "storm" door appearing the suspect fired from outside striking the victim while he was still inside the residence. There were no casings found at the scene. The residence was processed by E.V. and Moses' body was removed by the coroner's office.
>>
>> Detectives shortly later located Moses' girlfriend Michelle Edwards and interviewed her at Special Investigations. Edwards relayed she had been at 2 bars throughout the evening and had conversations over the phone with a subject identified as Deandre Dixon who she had current

10

> intimate relations with. Dixon was angry over a rocky relationship that Edwards had with Moses.
>
> Edwards stated that she felt that Dixon was responsible for Moses' murder due to Dixon telling her over the phone shortly before the murder, "I'll kill his lame ass." Edwards also stated that she again spoke with Dixon over the phone around the time of the murder and Dixon relayed to her, "I took care of everything." Edwards stated that she was unsure at the time what Dixon meant by this. She said during these conversations with Dixon, he appeared to be intoxicated and sounded angry. Edwards provided Dixons cell phone number of 937-[xxx]-6390.
>
> Dixon's cell was "pinged" using exigent circumstances and he showed to be in the area of 425 N. Orchard Ave. in the city of Dayton. Edwards confirmed that this address is where Dixon had been staying. She further provided that Dixon drove a black Tahoe. A black Tahoe bearing Ohio registration GSW2275 was located parked south of the residence.

(Doc. #44 at 2).

[*P15] On appeal, Dixon's entire substantive argument is as follows:

> * * * The only information provided by Ms. Edwards that was confirmed was Mr. Dixon's location and the model of vehicle that he drove. The information did not relate to the likelihood of criminal activity.
>
> Detective Steele essentially made the determination regarding whether probable cause existed to issue a warrant because no information was included in the affidavit to support the credibility of the information.
>
> Therefore, the Court erred in overruling Mr. Dixon's Motion to Suppress because there was not probable cause to issue a warrant.

(Appellant's brief at 21).

[*P16] Because Dixon only challenges Steele's affidavit on the basis that it did not attest to or demonstrate Edwards' credibility or

11

> reliability, we will confine our analysis to that issue [footnote omitted]
>
> In its ruling, the trial court concluded that Edwards "was an 'identified citizen informant' and sufficiently reliable to support the issuing judge's probable cause determination." (Doc. #44 at 2). We agree with this determination.
>
> [*P17]  Unlike an anonymous source or an unnamed confidential informant, Edwards was named and identified in the search warrant affidavit. It is well settled that information supplied by an "identified citizen informant" is treated as being more reliable than information obtained from other types of informants and may be presumed reliable, particularly where the citizen provides her basis of knowledge. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300-301, 1999-Ohio 68, 720 N.E.2d 507 (1999); see also *State v. Garner*, 74 Ohio St.3d 49, 63, 1995- Ohio 168, 656 N.E.2d 623 (1995) ("Information coming from a citizen eyewitness is presumed credible and reliable, and supplies a basis for a finding of probable cause in compliance with") *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
>
> [*P18]  Here police themselves initiated contact with Edwards, who told them about her conversations with Dixon and provided her basis of knowledge. She also explained the nature of her relationship with Dixon, gave police his cell phone number, and told them where he lived and what vehicle he drove. Under the totality of the circumstances, the information Edwards provided was sufficiently reliable to support the issuance of a search warrant. Accordingly, the second assignment of error is overruled.

*Dixon*, 2019-Ohio-231.

Because Ohio law provides an adequate opportunity to present Fourth Amendment issues, Dixon used that opportunity, and the Ohio courts fairly and thoroughly considered the claims he raised, habeas corpus review of Dixon's Fourth Amendment claims is barred by *Stone v. Powell* and should be dismissed.

**Ground Three: Convictions Based on Insufficient Evidence**

In his Third Ground for Relief, Dixon asserts his convictions for felonious assault, murder, improper discharge of a firearm, weapons under disability, specification for weapon, and specification for repeat violent offender[2] are against the manifest weight of the evidence and based on constitutionally insufficient evidence.

Dixon's manifest weight claim does not state a claim for relief under the United States Constitution and therefore will not be considered here. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

However, an allegation that a verdict was entered upon insufficient evidence does state a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law

---

[2] See footnote 1 above.

13

which determines the elements of offenses; but once the State has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010).

In his Petition, Dixon challenges the sufficiency of the evidence for his convictions of felonious assault, murder, improper discharge of a firearm, weapons under disability, the specification for use of a firearm, and the specification for being a repeat violent offender (Petition, ECF No. 1, PageID 8). Although Dixon raised only a manifest weight of the evidence claim in the Second District, the Court treats that as sufficient to preserve his insufficient evidence claim for habeas review. However, a state court finding that the verdict is not against the manifest weight of the evidence implicitly also holds that there is sufficient evidence. *Nash v. Eberlin,* 258 Fed. Appx. 761, 2007 U.S. App. LEXIS 29645 (6th Cir. Dec. 14, 2007); *Ross v. Miller*, No. 1:10-cv-1185, 2011 U.S. Dist. LEXIS 65082 (N.D. Ohio May 10, 2011)(White, M.J.); *Hughes v. Warden,* No. 1:10-cv-091, 2011 U.S. Dist. LEXIS 54131 (S.D. Ohio Apr. 27, 2011)(Merz, M.J.).

Dixon raised his weight of the evidence claim as his Third Assignment of Error on direct appeal and the Second District decided it as follows:

[\*P19]  In his third assignment of error, Dixon contends his convictions were against the manifest weight of the evidence.

[\*P20]  Dixon notes that there were no eyewitnesses to the shooting of Moses. He also asserts that cell phone "ping" data can be inaccurate. In addition, although bullets recovered from the crime scene were fired from one of the guns Dixon discarded, he contends there was no evidence that he possessed the gun when it was fired. Finally, Dixon notes that Edwards did not take his threat about killing Moses seriously and that Edwards' sister, Quayshawn, also made a death threat in a text message to Moses.

[\*P21]   When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997- Ohio 52, 678 N.E.2d 541 (1997). A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist.1983).

[\*P22]  With the foregoing standards in mind, we conclude that Dixon's convictions were not against the weight of the evidence. While it is true that no one saw Dixon kill Moses, a murder conviction may be based entirely on circumstantial evidence. *State v. Brown*, 2d Dist. Montgomery No. 27820, 2018-Ohio-4448, ¶ 23. Here the circumstantial evidence of Dixon's guilt was compelling. Edwards testified that Dixon threatened to kill Moses when she spoke to Dixon on the telephone. Records from Edwards' and Dixon's cell phones show that this conversation occurred around 10:22 p.m. Analysis of "ping" data showed Dixon's cell phone then moving from his mother's house toward Moses' residence. Shortly thereafter, Dixon's cell phone "pinged" off of the cell tower that serviced Moses' residence. Dixon's cell phone then began moving back toward his mother's house. Phone records showed calls between Edwards and Dixon during this time, and Edwards testified that he told her, "I have took [sic] care of everything." Anthony Ivery found Moses shot dead at around 11:49 p.m. A few hours later, Dixon ran and dropped a bag when police tried to arrest him. Inside the bag was a gun that a forensic expert testified had fired a bullet removed from Moses' skull.

> [*P23] Despite the strong evidence of his guilt, Dixon notes that cell phone "ping" data can be inaccurate, a point that his counsel argued to the jury. He also notes that his possession of the murder weapon does not mean he necessarily was the killer. While this is true, it was reasonable for the jury to infer that Dixon was the killer based on all of the evidence presented. As for the threatening text message from Edwards' sister, cell phone records corroborated testimony from Edwards and Quayshawn that they were together at a bar when Moses was shot. Therefore, the jury reasonably could have concluded that Quayshawn was not the killer despite her threat.
>
> [*P24] We conclude that this is not an exceptional case in which the evidence weighs heavily against Dixon's convictions, and the jury did not clearly lose its way in finding him guilty. The third assignment of error is overruled.

*Dixon*, 2019-Ohio-231.

The Second District did not discuss Dixon's convictions separately and neither does he in his Petition. Dixon does not dispute that Moses was murdered by someone who shot him through the storm door of his residence. He does not dispute that, per forensic evidence, the bullet recovered from Moses' skull had been fired from a gun that was in his possession when he was arrested. He does not dispute that he had a prior felony conviction and that it was for a violent offense. Dixon's whole defense was asserting someone else had done the killing. But the facts he does not dispute are sufficient to show that whoever murdered Moses did it with a firearm discharged into a residence; those facts are sufficient to prove felonious assault with a firearm specification, murder, and discharge into a residence. There is also more than sufficient evidence to identify Dixon as the offender and he does not contest his prior violent felony conviction, which would ground his convictions for having weapons under disability as well.

The Second District's decision on Dixon's Third Assignment of Error is not an objectively unreasonable application of *Jackson* and is therefore entitled to deference under the AEDPA. Dixon's Third Ground for Relief should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 15, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.